# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| PAUL FLANAGAN, on behalf of himself and other similarly situated laborers, ) ) ) ) Plaintiff, ) ) v. ) ) EXCEL STAFFING SOLUTIONS, LLC ) d/b/a EXCEL PERSONNEL, ) ) Defendant. ) | No. 16-CV-05653 Judge John J. Tharp, Jr. |

## MEMORANDUM OPINION AND ORDER

Plaintiff Paul Flanagan, an African American laborer, sued Xcel Staffing Solutions, LLC, ("Xcel")[1] for employment discrimination. Flanagan alleges that Xcel, a temporary employment agency, refused to provide work assignments to him and other African American laborers because of their race and in violation of 42 U.S.C. § 2000e, *et seq.* ("Title VII") and 42 U.S.C. § 1981 ("Section 1981"). Xcel moves to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Because Flanagan's complaint alleges facts sufficient to state claims under Title VII and Section 1981, the Court denies Xcel's motion to dismiss.

## BACKGROUND[2]

Defendant Xcel is a temporary employment agency with a branch office located in Waukegan, Illinois. It provides third-party client companies with low and moderately-skilled laborers to fill jobs on a daily basis. Xcel acts as an agent of its client companies in recruiting,

---

[1] According to Xcel's Motion to Dismiss, Flanagan improperly named the defendant in his complaint as "Excel Staffing Solutions, LLC d/b/a Excel Personnel," but the company's proper name is "Xcel Staffing Solutions, LLC." Mot. to Dismiss 1, ECF No. 18. The Court will refer to the defendant as "Xcel Staffing Solutions, LLC" or "Xcel."

[2] For purposes of the motion to dismiss, all well-pleaded facts in Flanagan's complaint are accepted as true. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

training, assigning, and paying laborers to work at the companies, and also acts as a joint employer with the client companies. The jobs for which Xcel's Waukegan branch office assigns laborers do not require any special skills, training, or qualifications.

Laborers who request a work assignment through Xcel seek to fill a daily job at any of the client companies to which Xcel supplies labor and they need not request an assignment to a particular client company. Laborers may walk into the Xcel Waukegan branch office to request a work assignment, at which point an Xcel employee takes the laborers' contact information and provides the laborer a work assignment or informs that laborer that he will be contacted when a daily job becomes available. The Waukegan branch office has a practice of retaining contact information for at least several months.

From June 2012 to May 2016, Flanagan sought work from Xcel's Waukegan branch office on multiple occasions. Each time, he was directed to sign his name on a sign-in sheet indicating the order in which he arrived and he waited at the office in an attempt to receive a work assignment. On some days, Xcel dispatchers told Flanagan that he would be called when work became available. On many occasions, however, Flanagan was never contacted or given a work assignment even though there were assignments available for which he was qualified. Xcel assigned work to non-African American laborers before African American laborers, even though the non-African American laborers were no more qualified and arrived at the branch office later or were seeking work from Xcel for less time than the African American laborers. Flanagan observed that, when he was waiting in the Waukegan branch office, approximately one third of the laborers seeking work assignments at the office were African American.

Flanagan alleges that Xcel engaged in a pattern and practice of intentionally discriminating against African Americans by refusing to give them work assignments because of

their race. He also claims that this practice was, at least in part, based upon discriminatory requests from Xcel's client companies to steer African American laborers away from their facilities in favor of Hispanic laborers. In addition, Flanagan alleges that Xcel had a policy of hiring Hispanic laborers over African American laborers and that this preference for Hispanic laborers caused a significant disparate impact on Flanagan and other African-American laborers in obtaining work assignments from Xcel.

Flanagan filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Illinois Department of Human Rights on March 16, 2015. On February 26, 2016, the EEOC issued a notice of right to sue to Flanagan. Flanagan filed this lawsuit on May 26, 2016.

## DISCUSSION

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must state a claim to relief that is plausible on its face." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face if the facts alleged allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The plaintiff's claims must include enough details to present "a story that holds together." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826-27 (7th Cir. 2014) (citing *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404-05 (7th Cir. 2010)). When considering a motion to dismiss, the court construes the complaint in the light most favorable to the plaintiff and draws all inferences from the alleged facts in the plaintiff's favor. *Id.*

### I. Failure to State a Claim for Intentional Discrimination under Title VII or Section 1981

Xcel argues that Flanagan's claims for intentional discrimination under Title VII and Section 1981 should be dismissed because Flanagan failed to plead sufficient facts regarding the alleged discrimination. To state a claim for intentional employment discrimination under Title VII or Section 1981, a plaintiff need only allege that he suffered an adverse employment action on account of his race. *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1028 (7th Cir. 2013) (applying the standard to sex discrimination claims under Title VII); *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 633 (7th Cir. 2013) (applying the standard to race discrimination claims under Title VII); *Smith v. Bray*, 681 F.3d 888, 899 (7th Cir. 2012) (holding that "[i]n general, the same standards govern intentional discrimination claims under Title VII, § 1981, and § 1983"). *See also Shirley v. Staffing Network Holdings, LLC*, No. 16 C 6279, 2016 WL 6599951, at *3 (N.D. Ill. Nov. 8, 2016) (holding that plaintiff need only allege that the defendant employment agency instituted an adverse employment action against him on the basis of his race to state a claim for discrimination under Title VII and § 1981). The complaint "need not allege all, or any, of the facts logically entailed by the claim, and it certainly need not include evidence." *Tamayo*, 526 F.3d at 1081 (citing *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998)) (internal quotations omitted). Furthermore, at the pleading stage, a plaintiff is not required to allege facts establishing a prima facie case of discrimination under the "indirect" method of proof. *Carlson*, 758 F.3d at 827 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-12 (2002)). "Employers are familiar with discrimination claims and know how to investigate them, so little information is required to put the employer on notice of these claims." *Id.* (citing *Tamayo*, 526 F.3d at 1084).

Flanagan's complaint meets this minimal pleading standard for an intentional discrimination claim under Title VII and Section 1981. Flanagan alleges that on many occasions,

4

he sought work assignments from Excel, for which he was qualified, when such assignments were available but did not receive an assignment because of his race. Flanagan further alleges that non-African American laborers received work assignments from Excel before African American laborers, despite the fact that the non-African American laborers were no more qualified for the assignments and arrived at Xcel's office later than the African American laborers. These allegations suffice to state a plausible claim that Flanagan suffered an adverse employment action on account of his race.

Xcel argues that Flanagan's complaint is insufficient because he fails to identify any of the Xcel client companies for which he sought but did not receive a work assignment and does not provide the specific dates or times when he and other African Americans were not assigned work. Flanagan, however, is not required to plead these details in his complaint. *See Pruitt v. Pers. Staffing Grp., LLC*, No. 16 C 5079, 2016 WL 6995566, at *4 (N.D. Ill. Nov. 30, 2016) (denying defendants' motion to dismiss and holding that the exact dates on which the plaintiffs sought employment from staffing agency and the names of the agency's third-party client companies associated with each alleged incident of discrimination were not required at the pleading stage); *Murdock-Alexander v. Tempsnow Emp't & Placement Servs., LLC*, No. 16-cv-5182, 2016 WL 6833961, at * 7 (N.D. Ill. Nov. 21, 2016) (holding that plaintiff's failure to plead the specific dates and times on which he was not assigned work by a temporary employment agency did not require dismissal of the complaint); *Shirley*, 2016 WL 6599951, at *3 (denying defendant's motion to dismiss despite the plaintiff's failure to allege the specific dates he sought work from the defendant staffing agency and the specific third party client companies for which he was qualified to work). Because Flanagan has alleged facts sufficient to state a claim for

intentional discrimination under Title VII and Section 1981, the Court denies Xcel's motion to dismiss those claims.

## II. Failure to State a Claim for Disparate Impact Discrimination under Title VII

Xcel also argues that Flanagan has not alleged sufficient facts in support of his Title VII disparate impact claim. Xcel claims that the complaint lacks factual details regarding a policy or practice that caused a statistically significant disparity.

An adverse or disparate impact claim under Title VII is distinct from a claim of intentional discrimination (also called a disparate treatment claim) under Title VII (although, as discussed further below, in this case the distinction appears to be largely semantic). Disparate impact claims involve employment practices that "fall more harshly on one group than another and cannot be justified by business necessity," but they do not require proof of discriminatory motive. *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 716 (7th Cir. 2012). Any employment policy, not just facially neutral policies, may be the subject of a disparate impact claim. *Adams*, 742 F.3d at 731. To survive a motion to dismiss, a disparate impact claim "must identify a specific employment practice, allege its causation of the disparate impact, and give [d]efendants fair notice of the claim." *McQueen v. City of Chicago*, 803 F. Supp. 2d 892, 907 (N.D. Ill. 2011).

Here, Flanagan alleges that Xcel had a policy and practice of assigning work to Hispanic laborers over African American laborers, and that the policy had a significant disparate impact on Flanagan and similarly situated African American laborers. That is to say, Flanagan asserts that Xcel refused him and other African American laborers work assignments because of their race, which of course is to say that Xcel intentionally discriminated against him based on his race. The Court is at a loss, then, to discern any substantive difference between Flanagan's disparate treatment theory and his disparate impact theory. If Xcel had a policy of discriminating against African American laborers based on their race, then he will have established both

6

intentional discrimination and disparate impact discrimination; if he fails to establish the existence of such a policy, then neither claim is likely to succeed.[3]

It may be that Xcel's challenge to a disparate impact theory is animated by an effort to bar the introduction of statistical evidence that Flanagan may rely on as evidence of disparate impact. Flanagan alleges that when he visited Xcel's Waukegan branch office, he observed that typically one third of the laborers at the office seeking work assignments were African American and that non-African American laborers received work assignments before African American laborers despite the fact that the non-African American laborers were no more qualified or arrived to the office later than the African American laborers. Xcel objects to the sufficiency of allegations premised on such evidence, but the complaint is not the battleground where the admissibility of statistical evidence will be decided. And contrary to Xcel's arguments, Flanagan need not allege in his complaint the racial makeup of the labor pool in the relevant area, the racial makeup of the labor force at Xcel's client companies, or the percentage of Hispanic laborers that were given work assignments by Xcel. The authority Xcel cites in support of its argument, *Adams v. City of Indianapolis*, does not hold that these statistics are necessary to state a claim for disparate impact. 742 F.3d at 733-34. In *Adams*, the Seventh Circuit ruled that the plaintiff's complaint failed to sufficiently allege a claim for disparate impact. *Id.* The *Adams*

---

[3] In *Pruitt v. Personnel Staffing Group, LLC*, a Title VII case against a temporary employment agency in which the plaintiffs alleged similar intentional discrimination and disparate impact claims for assigning work to Hispanic laborers over African American laborers, the court noted that the disparate impact claim could allow the plaintiffs to hold the defendant employment agency liable if it lacked purposeful intent to discriminate and was only complying with its client companies' requests. 2016 WL 6995566, at *3. This Court is not convinced that an employment agency's compliance with a client's discriminatory request to assign laborers of one race over another would establish the absence of intent to discriminate on the part of the employment agency. Therefore, even in light of the ruling in *Pruitt*, this Court is skeptical that any substantive difference exists between the plaintiff's disparate treatment and disparate impact theories.

7

plaintiffs alleged that the promotion testing process within the city's fire and police departments was racially and culturally biased and deprived African American officers and firefighters of promotional opportunities. *Id.* at 725. The court held that this claim was a "complex" disparate impact claim and, in support of such a complex claim, the court expected "some factual content in the complaint tending to show that the City's testing process, or some particular part of it, caused a relevant and statistically significant disparity between black and white applicants for promotion." *Id.* at 733. But the court found that there were "no factual allegations tending to show a causal link between the challenged testing protocols and a statistically significant racial imbalance in the ranks," nor "any other factual material to move the disparate-impact claims over the plausibility threshold." *Id.*

Unlike the claim in *Adams*, Flanagan's disparate impact claim is not at all complex; as noted, the policy identified is a policy of intentional discrimination. Therefore, less factual specificity is required to surpass "the plausibility threshold." *Id.* at 733 (noting that the level of factual specificity required to meet the *Twombly* and *Iqbal* standard rises with the complexity of a claim). Calculated percentages or other statistics are not necessary here to make Flanagan's claim plausible. It is beyond merely conceivable that a policy of assigning work to Hispanic laborers over African American laborers would result in a disparate impact on African Americans who apply for assignments at Excel, where roughly a third of the walk-in applicants were African American. *See Murdock-Alexander*, 2016 WL 6833961, at *7-8 (rejecting defendant's motion to dismiss disparate impact claim based on plaintiff's failure to allege the racial makeup of the labor pool or the percentage of Hispanic laborers assigned work instead of African American laborers); *Shirley*, 2016 WL 6599951, at *4 (denying defendant's motion to dismiss disparate impact claim where plaintiff offered only his own observations to support his

allegations of a policy and practice of hiring Hispanic laborers over African American laborers). *See also Pruitt*, 2016 WL 6995566, at *3 (holding that *Adams* does not set forth black letter requirements for statistics in every disparate impact case).

The substantial similarity between Flanagan's disparate treatment and disparate impact theories also defeats Xcel's argument that disparate impact is not within the scope of Flanagan's EEOC charge and therefore should be dismissed because he failed to exhaust his administrative remedies with respect to that claim. Under Title VII, a plaintiff may proceed only on claims that are within the scope of the plaintiff's charge to the EEOC. *Farrell v. Butler Univ.*, 421 F.3d 609, 616 (7th Cir. 2005). Courts review the scope of an EEOC charge liberally, and a Title VII claim can be brought in federal court if it is "like or reasonably related to the allegations of the [EEOC] charge and growing out of such allegations." *Id.* (citing *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 864 (7th Cir. 1985)). To be alike or reasonably related, the allegations must have a "factual relationship" and describe "the same conduct and implicate the same individuals." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 501 (7th Cir. 1994). A plaintiff need not include in his EEOC charge every fact that forms the basis of a subsequent lawsuit's claims. *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty.*, 804 F.3d 826, 831 (7th Cir. 2015).

Here, Flanagan alleged in his charge to the EEOC that "Excel has or has had a policy and/or practice of preferring non-African American laborers over other, qualified African American laborers in making assignments to its various client companies" and "[i]n the alternative, Excel has or has had a policy and/or practice of complying with discriminatory requests for non-African American laborers from several of its client companies." Compl., Ex. A at 3, ¶¶ 7, 9. He further stated that the policies and practices of Excel "have had the effect of denying [Flanagan] and a class of other, qualified African-American laborers an equal

9

employment opportunity and resulted in systemic discrimination against African-American applicants." *Id.* ¶ 8. These assertions are sufficient to allege both disparate treatment and disparate impact claims. *See Lucas v. Ferrara Candy Co.*, No. 13 C 1525, 2014 WL 3611130, at *4 (N.D. Ill. July 22, 2014) (finding similar allegations in plaintiffs' EEOC complaint "sufficient to encompass claims of disparate treatment and disparate impact"); *Lucas v. Gold Standard Baking, Inc.*, No. 13 C 1524, 2014 WL 518000, at *3 (N.D. Ill. Feb. 10, 2014) (same).

Xcel's argument that Flanagan's complaint alleges different policies than those alleged in his EEOC charge has no merit. Xcel claims that the EEOC charge alleges a practice of "preferring" non-African American laborers and "complying with discriminatory requests," while the complaint alleges a different practice of "hiring and assigning" Hispanic laborers and "failing to take action to stop" client companies' actions. Memo. in Supp. of Mot. to Dismiss ("Xcel Memo") 12, ECF No. 19. This, however, is a selective reading of the EEOC charge and the complaint, but even assuming Xcel's characterization is accurate, the allegations are still sufficiently alike and reasonably related such that the complaint is within the scope of the EEOC charge. *See Pruitt*, 2016 WL 6995566, at *6 (rejecting similar argument by defendants as "quibbling with the wording" and "engaging in semantics in arguing that there is a significant difference" between an EEOC charge and complaint that allege essentially the same or reasonably related facts).

Flanagan's complaint sufficiently states a Title VII claim for disparate impact, which was raised in his EEOC charge, and Xcel's motion to dismiss the claim is therefore denied.

### III. Statute of Limitations for Title VII Claims

Xcel argues that Flanagan's Title VII claims are barred by the statute of limitations because he does not allege any discriminatory acts occurring during the 300 days prior to his

EEOC complaint. Title VII claims must be filed within 300 days of the alleged discriminatory act or unlawful practice. *Riley v. Elkhart Cmty. Sch.*, 829 F.3d 886, 890 (7th Cir. 2016). A plaintiff, however, "is not required to negate an affirmative defense in his or her complaint." *Stuart v. Local 727, Int'l. Bhd. of Teamsters*, 771 F.3d 1014, 1018 (7th Cir. 2014). Dismissal of a claim may, however, be appropriate if the plaintiff pleads himself out of court by alleging facts that establish the affirmative defense. *O'Donnell v. City of Country Club Hills*, No. 12 C 3523, 2013 WL 5289522, at *3 (N.D. Ill. Sept. 18, 2013).

Here, Flanagan's EEOC charge was filed on March 16, 2015. He therefore can recover only for discrete employment acts that occurred 300 days prior to that date. *Lavalais*, 734 F.3d at 633. Flanagan's complaint alleges that "during the period of June 2012 to the present," he "sought work at [Xcel's] Waukegan Branch office on multiple occasions" but was not assigned any work. Compl. ¶¶ 20, 25. One or more of those occasions could have occurred during the 300-day window before Flanagan filed his EEOC complaint. It is not clear, on the face of Flanagan's complaint, that his Title VII claims are time-barred. Therefore, the claims cannot be dismissed at this stage. *See Pruitt*, 2016 WL 6995566, at *6 (rejecting defendants statute of limitations argument at motion to dismiss stage and finding that plaintiffs' pleadings did not indicate on their face that the Title VII claims were untimely because plaintiffs' EEOC charges alleged that they sought employment repeatedly and up through the present); *Murdock-Alexander*, 2016 WL 6833961, at *8-9 (holding that plaintiff's allegations were sufficient to encompass conduct within the 300-day window because, although plaintiff alleged he first sought work from defendants on a date well before the 300-day window, he also alleged that defendants refused to assign him work on multiple occasions up until the present and defendants' policies and practices were ongoing).

\*   \*   \*

For the reasons set forth above, Xcel's motion to dismiss is denied. Xcel's answer to the complaint is due February 9, 2018. A status hearing is set for Thursday, February 22, 2018 at 9:00 a.m.

Date: January 25, 2018

_John J. Tharp, Jr._
John J. Tharp, Jr.
United States District Judge